IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**TAMMY D. NAUGHTON**             **PLAINTIFF**

v.             **CIVIL ACTION NO. 3:22-cv-221-JMV**

**KILOLO KIJAKAZI,**
*Commissioner of Social Security*             **DEFENDANT**

## ORDER

This matter is before the court on appeal of Plaintiff from an unfavorable decision of the Administrative Law Judge ("ALJ") on her claim for a Period of Disability and Disability Insurance Benefits, from her alleged onset date of April 11, 2012, until her date last insured on December 31, 2017. On September 1, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[1]

---

[1] It is well settled that the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court explained: The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence … is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations, internal quotations, and brackets omitted). Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). And, of course, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

### A. Administrative History

Plaintiff applied for DIB under Title II of the Social Security Act (the Act), 42 U.S.C. § 423(d)(1)(A), on July 17, 2020, alleging disability since April 11, 2012, due to cavus foot, neuropathy, fibromyalgia, back pain, and depression. The Commissioner denied Plaintiff's application administratively, and, pursuant to Plaintiff's request, an ALJ held a telephonic hearing on October 18, 2021.

### B. The ALJ's Decision

The ALJ issued a hearing decision on January 13, 2022, concluding that Plaintiff was not disabled for purposes of the Social Security Act through her date last insured, December 31, 2017. Applying the sequential evaluation set forth in the Commissioner's regulations at 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that Plaintiff did not engage in substantial gainful activity from April 11, 2012, her alleged onset date, through December 31, 2017, her date last insured. The ALJ next found that Plaintiff had medically determinable impairments of hyperlipidemia, hypertension, migraine headaches, obstructive sleep apnea, and bronchitis. At step two, the ALJ found that, through her date last insured, Plaintiff did not have an impairment or a combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months; therefore, she did not have a severe impairment or combination of impairments. Accordingly, the ALJ found that Plaintiff was not disabled and denied her benefits application.

### C. The Parties' Positions

On appeal Plaintiff asserts the ALJ erred in failing to conclude that Plaintiff had a severe impairment under 20 CFR 404.1520(c) and 416.920(c) and she argues that if the ALJ had found her impairments severe, it would have likely altered the result of the decision. In support of her

severity argument, Plaintiff cites to the controlling case on that issue in this circuit, *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). In that case, the court held that an impairment could only be considered non-severe when "it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* at 1101. To support her claim of severity, Plaintiff relies exclusively on the following excerpts from her medical records:

- June 30, 2017: Assessment: Annual visit for general adult medical examination with abnormal findings; Hyperlipidemia, Vitamin D Deficiency, fibromyalgia, elevated blood pressure reading, and migraine headache. (Tr. at 262).
- July 10, 2017: Reports having anxiety attacks, feeling bloated and tired. Reports some SOB and tightness in chest. (Tr. at 260).
- August 14, 2017; Assessment: Fibromyalgia, hyperlipidemia, migraine headache, vitamin D deficiency, OSA. (Tr. at 267).
- August 17; 2017: Fibromyalgia, hyperlipidemia, migraine headache, OSA, vitamin D deficiency, cough, and bronchitis. (Tr. at 272).
- August 31, 2017; Fibromyalgia, Hyperlipidemia, Migraine headache, OSA, Vitamin D deficiency, Cough, Bronchitis. (Tr. at 277).
- September 28, 2017; The patient's medical history is notable for depression. She was treated with a low cholesterol diet and exercise and she responded poorly. The patient is currently taking medications as listed. Medication list from chart includes: bupropion HCI 300 mg oral tablet extended release 24 hr, escitalopram oxalate 10 mg oral tablet, meloxicam 7.5 mg oral tablet, Neurontin 400 mg oral capsule, ProAir HFA 90 mcg/actuation inhalation HFA aerosol inhaler, ropinirole 4 mg oral tablet, and Topamax 50 mg oral tablet. Diagnostic studies to date include: a complete blood county, electrolytes, a metabolic prolife, liver profile, and lipid profile. (Tr. at 279). Assessment: Fibromyalgia, hyperlipidemia, migraine headache, OSA, and vitamin D deficiency. (Tr. at 282).
- December 28, 2017; Assessment: Essential hypertension, fibromyalgia, migraine headache, OSA, vitamin D deficiency, constipation, unspecified constipation type. (Tr. at 289).

To support her claim for harmful error, Plaintiff asserts in an entirely conclusory fashion that because she was of advanced age (55) when her DLI expired, if the ALJ had found her multiple impairments severe, it would have likely altered the result of the decision. Pl.'s Br. at 5.

In response, the Commissioner points out that at step two of the sequential evaluation, Plaintiff must establish that she has a severe impairment and that Social Security Ruling (SSR) 85-28, 1985 WL 56856 at *3, provides, in part: "An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)." Def.'s Br. at 5-6 (citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985); 1985 WL 56856 at *2)). Further the Commissioner notes that in this case the ALJ expressly referenced *Stone* and a citation to Social Security Ruling (SSR) 85-28, 1985 WL 56856. Moreover, the Commissioner asserts – and I find persuasive – the fact that although Plaintiff alleges disability since April 2012, the record contains *no evidence of any medical treatment until June 30, 2017, six months prior to the date last insured.* Indeed, as the ALJ noted, the limited proof of Plaintiff's impairments during six months is inadequate as it demonstrates no evidence as required by section 404.1509 of any medical impairment that persisted at a disabling level of severity or significantly limited her ability to perform work-related activities for 12 continuous months prior to the date last insured.

And, with regard to the only medical entries relied on by Plaintiff in this appeal, the Commissioner notes that the first medical evidence, a June 2017 annual wellness exam with Mary Hurley, M.D., reflects Plaintiff reported she "does not have any health complaints or issues at this time" and confirmed that she was not receiving any treatment with other medical providers. Although Plaintiff claimed to have depression and anxiety attacks, Dr. Hurley noted

that Plaintiff "has not had any screening for depression." Mental status exam showed normal mood, affect, thought processes, and associations, and Dr. Hurley observed that Plaintiff had normal functional ability and normal "level of safety." She was assessed with hyperlipidemia, vitamin D deficiency, elevated blood pressure reading, and migraine headaches. At her follow up visit with Dr. Hurley in August 2017, Plaintiff reported having no current symptoms and she denied having any anxiety or depression. Though she complained of poor sleep and reported a history of obstructive sleep apnea she was not using her CPAP machine. Plaintiff returned to Dr. Hurley three days later and complained of a headache and a cough for the prior week. She reported no other physical or psychological concerns. Her chest examination showed nonlabored breathing, no use of accessory muscles, and slightly diminished breath sounds. Later that month, Dr. Hurley prescribed several medications after Plaintiff reported that her cough was worse. In September 2017, Plaintiff had a follow up visit with Dr. Hurley for monitoring of her cholesterol levels. She weighed 192 pounds and denied anxiety, depression, poor sleep, or any other psychiatric symptoms Plaintiff did not report any cough or other respiratory issues, and pulmonary inspection was within normal limits Subsequent treatment notes from December 2017 show that Plaintiff weighed 182 pounds and again had normal findings on physical examination. She was instructed to exercise for a minimum of 30 minutes four times a week.

There is no evidence of any manifestation related to her hypertension or cholesterol that would have imposed any functional limitation. and there was no evidence that any untreated sleep apnea imposed any ongoing limitations on her ability to perform work related activities. The ALJ also considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 19-2p, 2019 WL 2374244; however, here there was no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal,

endocrine, or cardiac functioning. Finally, while the ALJ noted that Dr. Hurley assessed fibromyalgia in the "past medical history" section of her reports, she pointed out that the relevant record documented no ongoing complaints of widespread pain; no documentation of the requisite trigger points, no repeated manifestations of six or more symptoms associated with fibromyalgia, and no indication that other causes were excluded for Plaintiff's symptoms. In short, while Plaintiff correctly points out that she need only make a *de minimis* showing to have a severe impairment at step two, here the evidence establishes she has failed to make such a showing. Indeed, she consistently displayed normal musculoskeletal, motor, and neurological findings.

### D. Conclusion

In this case, substantial evidence supports the step two finding. For the reasons stated above, the court finds that the Commissioner's decision is affirmed.

**SO ORDERED**, this the 9th day of May, 2023.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**